# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

RODNEY CONLEY,

                    Petitioner,    :                    Case No. 2:11-cv-1142

    - vs -                                  District Judge James L. Graham
                                                  Magistrate Judge Michael R. Merz

Warden, Ross Correctional
  Instutition,

                    Respondent.   :

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought by Petitioner Rodney Conley to obtain relief from his conviction in the Franklin County Common Pleas Court and the consequent sentence he is serving in Respondent's custody (Petition, Doc. No. 1).

On Judge Deavers' Order (Doc. No. 2), the Respondent has filed a Return of Writ (Doc. No. 6). On her further Order (Doc. No. 9), Petitioner filed a Traverse (Doc. No. 14) and Respondent has filed a Reply Brief (Doc. No. 15), making the case ripe for decision. In order to balance the judicial workload in the District, the reference was recently transferred to the undersigned (Doc. No. 19).

Conley has not filed his Petition on the standard form for habeas corpus petitions under 28 U.S.C. § 2254, but has instead set forth separate claims as follows:

> **Ground One:** Petitioner was denied his Sixth Amendment right to confront witnesses against him.
>
> **Ground Two:** Petitioner was denied protection against Double Jeopardy as guaranteed by the Fifth and Fourteenth Amendments

1

when he was sentenced to separate terms of imprisonment for allied offenses of similar import.

**Ground Three:** Petitioner was denied his right to Due Process as guaranteed by the Fifth and Fourteenth Amendments when it [the trial court] changed Petitioner's sentence after the sentence was final and without him being present.

**Ground Four:** Petitioner was denied effective assistance of counsel as guaranteed by the Sixth Amendment.

(Petition, Doc. No. 1, PageID 9-19.)


## Procedural History


On March 27, 2009, Conley was indicted by the Franklin County Grand Jury on one count each of aggravated murder, aggravated robbery, kidnapping, tampering with evidence, and having a weapon while under disability. Conley waived a jury trial on the repeat violent offender specifications and the weapons under disability charge. He was convicted on all counts and specifications. He then appealed to the Ohio Court of Appeals for the Tenth District, raising the following assignments of error:

> 1. BY ADMITTING VARIOUS STATEMENTS ALLEGEDLY MADE BY JESSE LANIER TO VARIOUS PERSONS AFTER HE WAS SHOT, THE COURT VIOLATED OHIO'S HEARSAY RULES AND APPELLANT'S RIGHT TO CONFRONT HIS ACCUSERS UNDER THE 6TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION (Transcript of Proceedings ("Tr.") at 25-40, 58, 64, 80, 103, 113, 140, 158, 77-80, 126, and 180-81);

> 2. APPELLANT'S CONVICTIONS WERE BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WERE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 1 & 16 OF THE OHIO

CONSTITUTION. (Tr. at 610-17; February 11, 2010 Judgment Entry ("Entry"), Appendix ("Appx."), Ex. 1);

3. THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING THE APPELLANT ON AGGRAVATED ROBBERY AND KIDNAPPING COUNTS IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND OHIO'S MULTIPLE-COUNT STATUTE. (Tr. at 615-30; Entry, Appx.1);

4. AFTER THE APPELLANT FILED HIS NOTICE OF APPEAL, THE COURT ISSUED AN AMENDED ENTRY THAT UNLAWFULLY ADDED A LIFE-TAIL TO THE APPELLANT'S SENTENCE. (March 22, 2010 Amended Judgment Entry ("Amended Entry"), Appx., Ex 2)

5. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION. (Tr. at 39-40, 58, 64, 80, 103, 113, 140, 158, 472, 478, and 585);

6. THE COURT SHOULD HAVE EXCLUDED AN ALLEGED DYING DECLARATION MADE TO A FAMILY MEMBER IN A LEVEL ONE TRAUMA CENTER BASED ON PUBLIC POLICY AND STATUTORY GROUNDS. (Tr. at 157-58).

(Appellant's Brief, Return of Writ, Doc. No. 6, Ex. 8.) The court of appeals affirmed the convictions and sentence. *State v. Conley,* 2010 Ohio 5715, 2010 Ohio App. LEXIS 4807 (Nov. 23, 2010). The Ohio Supreme Court declined jurisdiction of a further appeal. *State v. Conley,* 128 Ohio St. 3d 1428 (2011). The instant Petition was then filed on December 22, 2011 (Doc. No. 1).

**Analysis**

**Ground One: Violation of the Confrontation Clause**

In Ground One Conley asserts his rights under the Confrontation Clause were violated by admission of statements made by Jesse Lanier, the victim, to various persons prior to Lanier's death. In particular, he argues that he could not have been convicted of aggravated murder but for the testimony by Jesse Lanier's father that Lanier had said Conley robbed him. Respondent concedes this claim is preserved for consideration on the merits in habeas corpus.

As noted above, this claim was part of Conley First Assignment of Error on direct appeal. The court of appeals decided that assignment of error in full as follows:

> [*P18] In his first assignment of error, appellant argues that the trial court erred by admitting into evidence statements made to five different people after he had been shot, in each of which he implicated appellant as the person who shot him. The people to whom Lanier made the statements were Rupe and Bridges, the two employees at Performance Paving who were present when Lanier was left in the company parking lot; Letki, the paramedic who rode in the ambulance to the hospital with Lanier; Johnson, Lanier's girlfriend; and Price, Lanier's father.
>
> [*P19] Appellant argues that the trial court erred when it concluded that the statements made were dying declarations, and in concluding that the statements did not violate his right to confront witnesses against him as guaranteed by the United States and Ohio Constitutions.
>
> [*P20] We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *State v. Conway*, 109 Ohio St.3d 412, 2006 Ohio 2815, 848 N.E.2d 810, citing *State v. Issa*, 93 Ohio St.3d 49, 2001 Ohio 1290, 752 N.E.2d 904. Thus, our inquiry is limited to determining whether the trial court acted unreasonably, arbitrarily or unconscionably in deciding the evidentiary issues. *Conway*, citing *State v. Barnes*, 94 Ohio St.3d 21, 2002 Ohio 68, 759 N.E.2d 1240.

4

[*P21] Evid.R. 804(B)(2) establishes that dying declarations are an exception to the general rule prohibiting hearsay testimony, providing that, "[i]n a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death" are not excluded as hearsay if the declarant is unavailable as a witness. In order to be admissible as dying declarations, the evidence must show that the deceased person's statements were made under circumstances showing that the deceased had a sense of impending death, excluding from the person's mind any hope or expectation of recovery. *State v. Ray*, 8th Dist. No. 93435, 189 Ohio App. 3d 292, 2010 Ohio 2348, P40, 938 N.E.2d 378. The declarant's mental state at the time the statements are made is decisive, even though courts have recognized that it can be difficult to determine whether the declarant sensed that death was approaching. *State v. Washington*, 1st Dist. No. C-090561, 2010 Ohio 3175.

[*P22] In this case, the evidence supports the conclusion that Lanier made the statements implicating appellant as the person who shot him under a sense of impending death. Lanier had been shot three or four times, including twice in the chest. His first request to the Performance Paving employees was to allow him to call his loved ones, and he specifically told his girlfriend he "might not make it." Appellant argues that the number of people to whom Lanier made statements establishes that he could not have believed death was imminent. However, the evidence showed that the statements were all made in a relatively short time frame between the time Lanier was shot and the time in which he was placed into the medically-induced coma from which he never recovered. Thus, we cannot say the trial court abused its discretion when it concluded that the statements were dying declarations excepted from application of the hearsay rule.

[*P23] Appellant further argues that admission of Lanier's statements violated appellant's right to confront the witnesses against him. The United States Supreme Court has concluded that in some cases, admission of out-of-court declarations that are admissible under some exception to the hearsay rule can violate a defendant's Sixth Amendment right to confront his or her accusers where the out-of-court statements are testimonial in nature. *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177. However, since *Crawford*, the United States Supreme Court has clarified that the *Crawford* confrontation analysis does not apply to testimonial hearsay that was admissible

under common law, and has identified two types of statements that can be admitted without confrontation: dying declarations and statements where the lack of ability to confront the speaker was created by the defendant's own action (also known as "forfeiture by wrongdoing"). *Giles v. California* (2008), 554 U.S. 353, 128 S.Ct. 2678, 171 L. Ed. 2d 488.

[*P24] Because Lanier's statements were found to be dying declarations, the Confrontation Clause is not implicated in their admission into evidence. *State v. Washington*, supra. Thus, the trial court did not violate appellant's right to confront the witnesses against him by admitting Lanier's statements.

[*P25] Appellant also argues that the trial court erred by admitting into evidence that part of Lanier's statement to his father, Price, in which Lanier stated that appellant had robbed him. Appellant argues that this portion of the statement is not covered by the Evid.R. 804(B)(2) exception for dying declarations because it did not involve "the cause or circumstances of what the declarant believed to be his or her impending death." We disagree. Lanier's statement that appellant had robbed him, while not relating to the *cause* of his death, certainly related to the *circumstances* of his death.

[*P26] Consequently, appellant's first assignment of error is overruled.

*State v. Conley, supra*, ¶¶ 18-25.

In arguing his First Ground for Relief, Conley raises claims that the Ohio courts erred in finding that the objectionable statements come within the dying declaration exception to the hearsay rule as codified in Ohio Evid. R. 804(B)(2).   However, Federal habeas corpus is available only to correct federal constitutional violations.   28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,*

502 U.S. 62, 67-68 (1991).

Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983); *Bell v. Arn,* 536 F.2d 123 (6th Cir. 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000). Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly. *Bugh, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000)*quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). The Supreme Court has defined very narrowly the category of infractions that violate fundamental fairness. *Bey v. Bagley*, 500 F.3d 514 (6th Cir. 2007), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990)(Identification from a trial which resulted in an acquittal could be introduced at second trial for similarities.)

Whether or not the objectionable statements constitute dying declarations within Ohio evidence law is not a question which this Court can review or upon which it can grant habeas relief even if it found the state courts were in error. We are limited solely to the question whether the admission of these statements violated the Confrontation Clause.

The Tenth District Court of Appeals decided there was no Confrontation Clause violation

at Conley's trial.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Tenth District Court of Appeals understood that the Supreme Court had held that the Confrontation Clause does not bar testimony given under the forfeiture by wrongdoing and dying declarations exceptions.  *State v. Conley, supra,* at ¶ 23, *citing Giles v. California,* 554 U.S. 353 (2008).  *Giles* was principally concerned with declining to allow a California exception to the hearsay rule for forfeiture by wrongdoing.  However, the Supreme Court did state

> We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. See *[Crawford v. Washington,* 541 U.S. 36 (2004)] at 56, n. 6, 62, 124 S. Ct. 1354, 158 L. Ed. 2d 177. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying. See, *e.g., King* v. *Woodcock,* 1 Leach 500, 501-504, 168 Eng. Rep. 352, 353-354 (1789); *State* v. *Moody,* 3 N. C. 31 (Super. L. & Eq. 1798); *United States* v. *Veitch,* 28 F. Cas. 367, 367-368, 1 Cranch C.C. 115, F. Cas. No. 16614 (No. 16,614) (CC DC 1803); *King* v. *Commonwealth,* 4 Va. 78, 80-81 (Gen. Ct. 1817).

*Giles*, 554 U.S. at 358.  The Tenth District concluded, based on *Giles*, that "[b]ecause Lanier's statements were found to be dying declarations, the Confrontation Clause is not implicated in their admission into evidence."  *State v. Conley, supra,* at ¶ 24.  It specifically considered the evidence on which the trial court concluded these were dying declarations and found the evidence supported that conclusion.  *Id.* at ¶ 22.

In attempting to show that the court of appeals' decision is not an objectively reasonable

application of *Giles*, Conley relies on *Shepard v. United States*, 290 U.S. 96 (1933)(Petition, Doc. No. 1, PageID 11).  There the Supreme Court held the admitted statement was not a dying declaration because the declarant was not in fear of impending death when she made the statement and in fact greatly improved and was moving toward recovery before she had a relapse and died.  *Id.* at 99.  Essentially, the Supreme Court made a factual determination.  Moreover, the case did not discuss the Confrontation Clause.  The facts on which the Common Pleas Court and the Tenth District relied for finding that Lanier's statements were dying declarations are materially different from the facts the Supreme Court found in *Shepard*.

Petitioner also relies on *Davis v. Washington*, 547 U.S. 813 (2006), for the proposition that a dying declaration made to a family member is not admissible under the Confrontation Clause (Petition, Doc. No.1, PageID 11).  The case does not stand for that proposition at all.  Rather, it was an occasion for the Court to elaborate on the requirement that statements sought to be excluded under the Confrontation Clause had to be testimonial in nature.  The case did not involve a dying declaration.

Finally, Conley relies on *Mattox v. United States*, 146 U.S. 140 (1892).  While *Mattox* does contain the language quoted by Conley as to general application of the dying declaration exception, there the Supreme Court reversed a conviction for failure to admit a dying declaration.  In other words, it read the dying declaration exception more generously than the district court had.  Furthermore, there is no discussion of the Confrontation Clause in the opinion.

Other than these Supreme Court cases, Conley cites *United States v. Mayhew,* 380 F. Supp. 2d 961 (S.D. Ohio 2055), for the proposition that dying declarations must be made to law enforcement personnel instead of a family member.  That is a misreading of Judge Marbley's decision.  In fact, he found that dying declarations were not at all admissible under *Crawford*

because not reliable.  That decision was made in the context of an original criminal prosecution in federal court and did not purport to be an interpretation of *Crawford* or *Giles*.  The task of a district court when applying the Federal Rules of Evidence in the first place is different from our task when reviewing the application of state rules of evidence in a habeas corpus case.  Judge Marbley's decision that the proffered dying declaration in *Mayhew* was not reliable is far different from a conclusion that all such dying declarations are unconstitutionally unreliable, a result the United States Supreme Court has never reached.

Conley has failed to show that the Tenth District's decision is an objectively unreasonable application of *Crawford* and its progeny.  The First Ground for Relief should therefore be denied on the merits.

### Ground Two:  Double Jeopardy

In his Second Ground for Relief, Conley claims that his rights under the Double Jeopardy Clause were violated by his convictions and sentences for both kidnapping and aggravated robbery.  Conley raised this claim as his third assignment of error on direct appeal which the Tenth District decided as follows:

> [*P39] In his third assignment of error, appellant argues that the trial court erred in convicting and sentencing him on the charges of aggravated robbery and kidnapping because those two offenses should have merged. Merger of offenses is governed by R.C. 2941.25, which provides that when charges constitute allied offenses of similar import, the defendant can only be convicted on one charge. The test to be applied in such cases requires the court to first consider whether the two offenses are allied offenses of similar import, and then, if the offenses are allied offenses, to consider whether they were committed with a separate animus. *State v. Rance*, 85 Ohio St.3d 632, 1999 Ohio 291, 710 N.E.2d 699.

[*P40] The first step of the analysis requires consideration of the elements of the two offenses, to determine whether the elements correspond to such a degree that commission of one will result in commission of the other. *State v. Cabrales*, 118 Ohio St.3d 54, 2008 Ohio 1625, 886 N.E.2d 181. The Supreme Court of Ohio has concluded that kidnapping, as defined in R.C. 2905.01(A)(2), and aggravated robbery, as defined in R.C. 2911.01(A)(1), are allied offenses of similar import. *State v. Winn*, 121 Ohio St.3d 413, 2009 Ohio 1059, 905 N.E.2d 154.

[*P41] Appellant's indictment for kidnapping charged appellant with violating both R.C 2905.01(A)(2) (acting with purpose to facilitate the commission of any felony or flight thereafter) and 2905.01(A)(3) (acting with purpose to terrorize or inflict physical harm on the victim or another). The state argues that we need not determine whether the Supreme Court's decision in *Winn* applies to the R.C. 2905.01(A)(3) form of kidnapping because the evidence in this case shows that appellant acted with a separate animus.

[*P42] When considering whether kidnapping was committed with an animus separate from some other crime, " 'where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions.'" *State v. Garrett*, 1st Dist. No. C-090592, 2010 Ohio 5431, P51, quoting *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus.

[*P43] Appellant argues that the shooting occurred on the same street on which Lanier was subsequently left, and was therefore part of the same continuous action. However, the evidence showed that after Lanier had been shot, appellant drove some distance before pulling Lanier from the SUV and leaving him on the Performance Paving parking lot. This action was substantial enough to show some significance independent of the aggravated robbery, and thus the two offenses were committed with a separate animus.

[*P44] Accordingly, appellant's third assignment of error is overruled.

*State v. Conley, supra*, ¶¶ 39-44.

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily include, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz, supra*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe* at 697, *citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

The two statutes in question here, aggravated robbery as proscribed by Ohio Revised

Code § 2911.01(A)(1) and kidnapping as proscribed by Ohio Revised Code § 2905.01(A)(2), obviously satisfy the *Blockburger* test because each has an element not contained in the other. 2911.01(A)(1) requires a theft offense plus the use of a deadly weapon. Section 2905.01(A)(2) requires removing a person from one place to another by force, threat, or deception.

Because the two statutes satisfy the *Blockburger* test, a violation of each may be separately punished if the enacting legislature intended separate punishment. To decide that question, the Tenth District applied the allied offenses statute, Ohio Revised Code § 2941.25, and found that separate punishment was permissible because Conley acted with a separate animus as to each offense. The appellate court found that after Conley shot Lanier, he drove some distance from the place where the shooting occurred, then pulled Lanier from his vehicle and abandoned him in a parking lot. Those findings are a reasonable determination of the facts based on the evidence presented at trial. The Tenth District's determination that those facts are sufficient to satisfy the Ohio Revised Code § 2941.25 requirement of "separate animus" is a determination of state law binding on this Court.

Conley disagrees with this conclusion of the Tenth District and cites *State v. Johnson*, 128 Ohio St. 3d 153 (2010), and *State v. Wilson*, 129 Ohio St. 3d 214 (2011). In *Johnson* the defendant beat a child to death and was convicted of both child endangering and felony murder for the same act. *Johnson* at ¶ 3. The Ohio Supreme Court expressly held that the same conduct had resulted in both the child endangering and felony murder results. *Id.* at ¶¶ 54-56. In *Wilson* the Ohio Supreme Court affirmed a finding by the Eighth District Court of Appeals that the defendant did not act with a separate animus as to the aggravated robbery and kidnapping offenses of which he was convicted. This was based upon a finding that "the facts developed at trial indicated that Wilson did not have a separate animus for committing the kidnapping." *Id.* at

¶ 5.

Neither *Johnson* nor *Wilson* is inconsistent with the Tenth District's decision in this case. Both require a focus on the actual conduct of a defendant to determine if the defendant acted with a single animus, precisely the analysis the Tenth District employed in this case.

Conley's Second Ground for Relief is without merit and should be dismissed with prejudice.


### Ground Three:  Denial of Due Process by Change of Sentence in the Absence of the Defendant

In his Third Ground for Relief, Conley asserts that he was sentenced on February 11, 2010, to 39.5 years in prison and thereupon transported to the Department of Corrections to begin service of the sentence.  He filed his notice of appeal on March 12, 2010.  Then, on March 22, 2010, he claims the Franklin County Common Pleas Court changed his sentence to 39.5 years to life at a hearing at which he was not present.  He asserts he was entitled to be present for any re-sentencing hearing and that the Common Pleas Court had lost jurisdiction when he filed his notice of appeal.

Conley presented this claim as his Fourh Assignment of Error on direct appeal which the Tenth District decided as follows:

> **[\*P45]** In his fourth assignment of error, appellant argues that the trial court erred when it issued an amended entry imposing a life tail on appellant's sentence. Specifically, appellant argues that this action occurred after he had filed a notice of appeal with this court appealing the trial court's judgment, and that the trial court had therefore lost jurisdiction to take any further action in the case. Generally, after a notice of appeal has been filed, a lower court loses jurisdiction to issue any orders that would impair the ability of the appellate court to exercise jurisdiction over the issue that has been appealed. *CM Newspapers, Inc. v. Dawson* (Jan. 28, 1992),

14

> 10th Dist. No. 91AP-1067, 1992 Ohio App. LEXIS 344. The impairment "must be of a nature that actually interferes with the exercise of appellate jurisdiction by the appellate court." *Olen Corp. v. Franklin Cty. Bd. of Elections* (1988), 43 Ohio App.3d 189, 200, 541 N.E.2d 80.
>
> [*P46] At the sentencing hearing, the trial court stated its intention to impose a sentence of 30 years to life. Thus, the trial court's amended entry was necessary to correct the error that occurred when the life tail was omitted from the sentencing entry. That correction does not interfere with our exercise of appellate jurisdiction to consider the issues before us on appeal.
>
> [*P47] Consequently, appellant's fourth assignment of error is overruled.

*State v. Conley, supra*, ¶¶ 45-47.

The Tenth District determined as a matter of fact that there was no increase in sentence, but rather an amended judgment entry to reflect the sentence actually imposed orally in open court in Conley's presence. Conley points to nothing in the record which contradicts the finding of fact. Upon examination of the transcript, the Tenth District's finding is plainly accurate. The trial judge imposed "a sentence of 30 to life." (Trial Tr. at 626, Doc. No. 7, PageID 1028.) The court then imposed an additional merged five years on the specification two on counts one and two. *Id.* at PageID 1029. The judge followed with a merged three year mandatory consecutive sentence on specification one on counts one, two, and three. *Id.* This was ordered to be served consecutively with the eighteen months imposed for the drug conviction in "case 6622." *Id.* Added together, that is 39.5 years to life, just as the Tenth District found. Conley points to nothing in the record which contradicts the finding of fact.

The Tenth District also decided as a matter of Ohio law that the Common Pleas Court did not act outside its jurisdiction by filing the amended judgment after the notice of appeal was filed. This Court is bound by the Tenth District's determination of Ohio law. The Sixth Circuit

has found this practice to be constitutional.  *Norris v. Schotten*, 146 F.3d 314, 333 (6th Cir. 1998).

While the Court agrees that a defendant has the constitutional right to be present when sentence is pronounced, that happened here, as the record shows.  The amended judgment entry merely corrected the original judgment entry which did not reflect the sentence imposed in open court.  Conley has not shown that the Tenth District's decision is contrary to or an unreasonable application of any United States Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence.  His Third Ground for Relief should be dismissed with prejudice.

### Ground Four:  Ineffective Assistance of Trial Counsel

In his Fourth Ground for Relief, Conley claims he received ineffective assistance of trial counsel when his trial attorney did not object at certain points to the admission of the victim's statements to his father, did not argue that the dying declarations should be excluded as a matter of relevance or public policy, did not request a jury instruction that the dying declarations were to be considered on the homicide charge only, and never objected to the failure to merge the allied offenses of similar import (Petition, Doc. No. 1, PageID 19-21).

Respondent contends Conley had procedurally defaulted on this claim by failing to fairly present it to the Ohio Supreme Court on direct appeal.  The record reflects that this claim was raised on direct appeal to the Tenth District and included in the *pro se* appeal Conley filed in the Ohio Supreme Court.  However, the Ohio Public Defender was appointed to represent Conley before the Ohio Supreme Court and did not include an ineffective assistance of trial counsel claim in the amended jurisdictional memorandum it filed on his behalf (See Return of Writ, Doc.

No. 6, Exhibits 11-18.)   Respondent argues that under Ohio law, an amended pleading completely replaces the prior pleading and therefore Ohio Supreme Court consideration of the ineffective assistance of trial counsel claim was waived by its omission from the amended jurisdictional memorandum (Return of Writ, Doc. No. 6, PageID 129-130).

Before a procedural default can be enforced against a habeas petitioner, it must first have been enforced against the petitioner in the state courts.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), *citing County Court of Ulster County v. Allen*, 442 U.S. 140, 149 (1979).  The Ohio Supreme Court's decision declining jurisdiction in this case is the usual opaque Entry signed by the Chief Justice which states "[u]pon consideration of the jurisdictional memoranda filed in this case, the Court denies leave to appeal and dismisses the appeal as not involving any substantial constitutional question."  (Entry, Return of Writ, Ex. 17, Doc. No. 6, PageID 396.)  It is not possible to determine from this Entry whether the Ohio Supreme Court considered the *pro se* jurisdictional memorandum or not.   Certainly the law relied on by Respondent for the proposition that an amended pleading completely replaces a prior pleading is not specific to this area of Ohio Supreme Court practice.   On balance, the Court cannot tell whether the Ohio Supreme Court was enforcing a procedural bar.   Therefore Respondent has not proven a procedural default and the Court will consider this claim on the merits.

Ineffective assistance of trial counsel was raised by Conley as his Fifth Assignment of Error on direct appeal and the Tenth District decided it as follows:

> **[\*P48]** In his fifth assignment of error, appellant argues that he received ineffective assistance from trial counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance fell below an objective level of reasonable representation and that the defendant suffered prejudice as a result. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674. In assessing such claims, courts must "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance."
Id., 466 U.S. at 689, 104 S.Ct. at 2065.

[*P49] Appellant argues that trial counsel's performance was
deficient in a number of ways. First, appellant argues that trial
counsel may not have adequately preserved objections to all of the
statements made by Lanier that the trial court admitted as dying
declarations. We believe trial counsel did adequately preserve all
such objections. Furthermore, given our disposition of appellant's
first assignment of error, in which we concluded that the trial court
did not err in admitting those statements, we cannot say that
appellant suffered any prejudice as a result of failing to more fully
object to their admission.

[*P50] Appellant also argues that trial counsel was ineffective for
failing to object to the trial court's admission of Lanier's statements
made to his father, Price, on either relevance or public policy
grounds. Specifically, appellant argues that trial counsel should
have objected based on public policy and statutory considerations
regarding operation of Level One trauma centers. However, we
cannot say that failure to object on those specific grounds plainly
fell outside the wide range of reasonable professional assistance
that we must presume was afforded.

[*P51] Finally, appellant argues that trial counsel was ineffective
for failing to request a jury instruction that would have informed
the jury that it could only consider Lanier's dying declarations for
the charge of aggravated murder under Evid.R. 804(B)(2), and not
for any of the other charges. However, given the other evidence
relating to those charges, it appears that a limiting instruction
regarding the statements made by Lanier would not have changed
the outcome of the trial. Therefore, we cannot say that appellant
suffered any prejudice as a result of counsel's failure to request
such an instruction.

[*P52] Consequently, appellant's fifth assignment of error is
overruled.

*State v. Conley, supra*, ¶¶ 48-52.

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so
defective as to require reversal of a conviction or death sentence

has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* ___ U.S. ___, ___, 130 S.Ct. 2250, 2255 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright,* 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing*, *Strickland, supra*; *Blackburn v.*

*Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987) *quoting*, *Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1760 (2012), *quoting Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 792 (2011).

With respect to the first sub-claim about not objecting to the hearsay testimony of the victim's father, the Tenth District found there was no deficient performance because all of the objections were preserved for appeal.

As to the second sub-claim about a relevance or public policy argument against the victim's father's testimony, the Tenth District found in summary fashion that this was not outside the realm of professional performance.  This Court agrees.  The testimony was certainly relevant to prove the identity of the shooter.  The fact that the statements were made in the trauma center of the hospital would not have supported an exception to the dying declarations rule.  The hospital's general rule against visitors in the trauma center was obviously not intended to have any impact on the admissibility of evidence obtained in violation of that rule, but to enable the efficient operation of the hospital.  Conley advances no cogent reason why this should have led the trial court to create an exception to the dying declarations rule.   He offers no examples of any other court which has accepted such an argument, making it unlikely the Franklin County Common Pleas Court would have done so.  The Ohio law he cites, Ohio Revised Code § 3727.09(B), prohibits providing care to persons in trauma centers without complying with law and protocols for operating those centers.  Nothing about that statute suggests any purpose to exclude evidence which might have been obtained because a father, a hospital employee, visited his dying son in violation of the protocol.

Conley argues his counsel was ineffective for not requesting a jury instruction limiting

the jury's consideration of the dying declarations to the aggravated murder charge, as opposed to the aggravated robbery and kidnapping charges.  The Tenth District found no prejudice in the failure to request the instruction, given the evidence from other sources about the other charges. In addition, Conley has offered no authority for the proposition that such an instruction would have been warranted, since the dying declarations exception allows hearsay regarding the decedents statements about the "cause or circumstances" of the impending death, and Lanier's comment to his father that Rodney robbed him, shot him, and left him for dead is relevant to the aggravated robbery and kidnapping charges, as well as the homicide.

Finally, Conley complains that his counsel never objected to the imposition of separate sentences for allied offenses of similar import (Petition, Doc. No. 1, PageID 21).  This complaint about counsels' conduct of the case does not appear to have been raised on direct appeal:  it is not among the claims of ineffective assistance of trial counsel that the Tenth District adjudicated. Because it would have been evident on the face of the record, it would have been required to be raised on direct appeal or be barred by *res judicata* under *State v. Perry,* 10 Ohio St. 2d 175 (1967).  That doctrine is an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F. 3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).  Furthermore, if the Court were to reach the merits of this ineffective assistance of trial counsel sub-claim, it would find no merit because the underlying double jeopardy claim is without merit and the Tenth District found no bar to consideration on the merits by any omission in the trial court.  Ground Four for Relief should be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify that any appeal would not be taken in objective good faith.

April 26, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).